Tom J. Ferber (tferber@pryrocashman.com)
Stephanie R. Kline (skline@pryorcashman.com)
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
(212) 421-4100
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TERRI V. DONALD,

           Plaintiff,

v.

THE TYLER PERRY COMPANY, INC.
d/b/a TYLER PERRY STUDIOS and LIONS GATE
ENTERTAINMENT CORP. d/b/a LIONS GATE,

           Defendants.

13 Civ. 1655 (WHP)

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

    A. The Settings Are Dissimilar ............................................................................................ 2

    B. There Is No Actionable Similarity Between The Characters ........................................ 3

        1. *Wesley and Cory Are Dissimilar* ............................................................................ 3

        2. *Lindsay and Cheryl Are Dissimilar* ....................................................................... 4

        3. *Natalie and Salina Are Dissimilar, As Are Walter and Salina* ............................. 6

    C. Random and Trivial Similarities Are Not Actionable .................................................... 7

    D. Plaintiff's Reliance on *Gal* Is Misplaced ...................................................................... 9

CONCLUSION .......................................................................................................................... 11

## TABLE OF AUTHORITIES

**CASES**                                               **PAGE(s)**

Allen v. Scholastic, Inc.,
    739 F. Supp. 2d 642 (S.D.N.Y. 2011).................................................................9

Denker v. Uhry,
    820 F. Supp. 722 (S.D.N.Y. 1992), aff'd, 996 F.2d 301 (2d Cir. 1993)..............10

Gal v. Viacom International, Inc.,
    403 F. Supp. 2d 294 (S.D.N.Y. 2005).............................................................9, 10

Gal v. Viacom International, Inc.,
    518 F. Supp. 2d 526 (S.D.N.Y. 2007)...................................................................10

Green v. Lindsey,
    885 F. Supp. 469 (S.D.N.Y. 1992), aff'd, 9 F.3d 1537 (2d Cir. 1993)................10

Hobbs v. John,
    No. 12 C 3117, 2012 U.S. Dist. LEXIS 154452 (N.D. Ill. Oct. 29,
    2012)(emphasis added), aff'd, No. 12-3652, 2013 U.S. App. LEXIS 14401
    (7th Cir. July 17, 2013) .........................................................................................1

Hogan v. DC Comics,
    48 F. Supp. 2d 298 (S.D.N.Y. 1999)...............................................................9, 10

Kretschmer v. Warner Bros.,
    1994 U.S. Dist. LEXIS 7805 (S.D.N.Y. June 7, 1994).......................................10

Muller v. Twentieth Century Fox Film Corp.,
    794 F. Supp. 2d 429 (S.D.N.Y. 2011), aff'd, Muller v. Anderson, 2012 U.S. App.
    LEXIS 23033 (2d Cir. 2012) .................................................................................9

Smith v. Weinstein,
    578 F. Supp. 1297 (S.D.N.Y. 1984), aff'd w/o op., 738 F.2d 419 (2d Cir. 1984)...............3

Walker v. Time Life Films, Inc.,
    784 F.2d 44 (2d Cir. 1986)........................................................................1, 9, 10

Warner Brothers, Inc. v. American Broadcast Companies,
    720 F.2d 231 (2d Cir. 1983)...................................................................................3

Williams v. Crichton,
    84 F.3d 581 (2d Cir. 1996)............................................................................2, 3, 9

## PRELIMINARY STATEMENT

Plaintiff's opposition studiously ignores the fundamental *dissimilarity* between the <u>stories</u> told in the Book and the Film. The Book tells the story of Cheryl's trip to North Carolina to meet her would-be fiancé, Cory, during which discloses the brutal and sordid events of her traumatic past before she became the successful "professional" Cory knows. Cheryl hopes that Cory will still want to marry her after this "dreaded conversation," which she tells him over several days on a cruise ship, after they are shipwrecked in Cory's speedboat. (Book at 2-3, 13.) The Film tells an entirely different story about the educated and affluent Wesley Deeds, who realizes that he is not truly happy with his seemingly enviable life, because he has been living up to family expectations rather than living for himself, until he altruistically helps a down-on-her-luck widow (Lindsay) and her young daughter, and realizes that his life could be something more.

It is precisely in cases like this, in which the copyrightable expression of the parties' work "are different in content and <u>tell different stories</u>," where dismissal as a matter of law is appropriate. See <u>Hobbs v. John</u>, No. 12 C 3117, 2012 U.S. Dist. LEXIS 154452, at *21 (N.D. Ill. Oct. 29, 2012) (emphasis added) (citation omitted), <u>aff'd</u>, No. 12-3652, 2013 U.S. App. LEXIS 14401, at *13 (7th Cir. July 17, 2013) (although both parties' lyrics told story of impossible during Cold War love, and plaintiff offered list of alleged similarities, "each song *expresse[d]* this general idea differently…. [and they] tell *different* stories") (emphasis in original).

Plaintiff ignores the difference in copyrightable expression and resorts to a variety of common, and legally inadequate, tactics. First, she uses parallel verbiage to describe story elements which are *not* parallel, in the hope of creating the appearance of similar expression where none actually exists. Of course, "in copyright infringement cases, the works themselves supersede and control contrary descriptions of them." <u>Walker v. Time Life Films, Inc.</u>, 784 F.2d

44, 52 (2d Cir. 1986). Second, she alleges various random and/or trivial similarities. See, e.g., Williams v. Crichton, 84 F.3d 581, 590-91 (2d Cir. 1996). Third, she refers to unprotectable *scenes a faire*. All of these are classic examples of what does not constitute actionable similarity of copyrightable expression. Finally, Plaintiff's reliance on the *one* case she cites in support of her opposition is misplaced because the proposition for which she cites it is taken out of context.[1]

## ARGUMENT

### A.   The Settings Are Dissimilar

Plaintiff strains to avoid the unassailable difference in the settings of the parties' works – the Book being based almost entirely at sea (Book at 15-193), the Film in San Francisco – by arguing that there are some "shared settlings."[2] She references "luxury hotel suites/luxury corporate apartments," "climactic scenes set at ports (one a cruise ship port, the other an airport)," "scenes set in homeless shelters," and "the male leads' boat/motorcycle." (P.Opp. at 10.) But there is no substantial similarity of expression here, and not only because Plaintiff is ignoring the overwhelming majority of the two stories.

While the Deeds corporate apartment is significant to the Film's plot because Wesley uses it to help reunite Lindsay and Ariel (after Ariel has been taken away by child services because they had been evicted from their home), the North Carolina hotel suite – which Cory has obtained for his and Cheryl's joint use – has no comparable significance in the Book's story.

Plaintiff's own description of the "climactic scenes at ports" – with one at a cruise ship port, where Salina's malicious scheme is revealed, and the other at the San Francisco airport, where Lindsay and Ariel surprise Wesley on a plane heading to Africa – is a perfect example of the difference between (at best) an uncopyrightable idea and the detailed, copyrightable

---

[1] Plaintiff's Opposition does not dispute that his second and third claims should be dismissed.
[2] Plaintiff's Reply To Defendants' Motion For Judgment On The Pleadings ("P.Opp.") at 10.

expression of an idea. The same is true of Plaintiff's argument likening Cory's boat early in the Book to the motorcycles which Lindsay borrows in the Film similar.

Plaintiff's reference to "homeless shelters" is puzzling, because there is no citation to one in the book.[3] Cheryl describes how, after she was kidnapped and raped, she was not homeless, but was sent by court order to St. Dominick's Group Home for children. (Book at 134-36.) Later, in order to avoid being sent to such "group homes," where she was picked on by older kids, she slept on the subway (not in a homeless shelter). (Id. at 164.) In the Film, after her eviction, Lindsay tries a homeless shelter for one night, but runs out when someone tries to assault her.

### B.  There Is No Actionable Similarity Between The Characters

In an effort to create the false appearance of similarity, Plaintiff's brief Plaintiff both tries to rewrite the Book to claim similarities that do not exist, and ignores precedent establishing that "[s]tirring one's memory of a copyrighted character" does not constitute actionable similarity unless the defendant's work copies the detailed development of the character "and not merely the broader outlines." Warner Bros., Inc. v. American Broad. Cos., 720 F.2d 231, 242 (2d Cir. 1983); Smith v. Weinstein, 578 F. Supp. 1297, 1303 (S.D.N.Y. 1984), aff'd w/o op., 738 F.2d 419 (2d Cir. 1984) (citation omitted).

#### 1. *Wesley and Cory Are Dissimilar*

Plaintiff claims that the "lead male character[s]" are 40-year-old black men who have inherited millions from their fathers. She then attributes non-existent elements to the Book, claiming that Cory's life "is painfully stifling and ... lacking spontaneity" until the "female lead" "helps liberate him to a more free life." (P.Opp. at 5.) It is true that Wesley has inherited his father's computer software company, and the Film's whole story is about how the development

---

[3] It is also difficult to know what Plaintiff is referring to because, as is often the case, her brief fails to reference specific pages in the Book.

3

of his friendship with Lindsay leads him from merely living a life to meet family expectations to a more satisfying, spontaneous and happy one. Cory is not remotely the same character. He "inherited money long ago" from his *great grandfather*, "a famous black movie writer," and Cory bought a television production studio of his own, from which he "netted fourteen million dollars per year." (Book at 75-76.). Unlike Wesley, Cory is *not* portrayed as lacking spontaneity; indeed, his planned massage surprise for Cheryl and boatride proposal (Book at 15, 20-24) suggest the *opposite*. He enters the story happily in love with Cheryl and ready to marry her. He is *not* actionably similar to Wesley.

    2.    *Lindsay and Cheryl Are Dissimilar*

Plaintiff tries to draw equally improper analogies between Cory and Lindsey. He argues that they have the following in common:

> Both have a tough background and lives [sic] in poverty with no familial help, and is lighter-skinned (the light-skinned/dark-skinned distinction being a thorny issue in the African American community). Each woman has lived on the streets and at times in a literally transient home – in *Bad Apples* in a subway car/in *Good Deeds* a car. While homeless, each is sexually assaulted by a deviant in a shelter, though as *Good Deeds* is rated PG 14 [sic], the implication of sexual assault is obvious, but the attack is foiled.

(P.Opp. at 6.) Once again, Plaintiff makes a spurious argument which is belied by the actual content of the works, as Cheryl and Lindsay are dissimilar characters.

Cheryl's past was traumatic *not* because she was a victim of poverty; indeed, she makes a point of saying that her mother was a CPA and made "*good money*." (Book at 135.) Her problem was that her childhood was filled with horrific traumas, including: (i) an abusive stepfather (id. at 33-38); (ii) witnessing the abuse and murder of childhood friends (id. at 67-74, 87-92); (iii) seeing her mother being abused and, in turn, sometimes being beaten by her (id. at 103-06); (iv) being kidnapped, raped and almost murdered (id. at 131-33); (v) being sent by her mother to a court-ordered stay in a diagnostic center, having venereal diseases, and then being

4

sent to a children's home, where she was picked on because of her light skin color (id. at 133-35, 148-58); (vi) going "underground" to avoid the children's homes and the police, "begging for money" and "sleeping on trains" (id. at 164-73); being made a virtual slave by a brutal pimp (id. at 173-78); and relationships with four men, the last of whom she married because he "was a saint at first," but who later abused and beat her, until she killed him in self-defense (id. at 185-88, 190). Despite this past, Cheryl rose above it, first becoming a sales girl, then learning computers, attending college and finally working in the "finance field." (Id. at 184-86.)

Lindsay's experience in the Film is very much the *opposite* of Cheryl's. Her past was happy: she was a nursing student with a loving husband and a beautiful child. It is not Lindsay's past, but her present where things went awry after her husband was killed in Iraq and she couldn't make ends meet. She faced none of the traumas described above.[4] Moreover, while the actress who plays Lindsay – Thandie Newton – may be light-skinned, unlike Cheryl, Lindsay's light skin is irrelevant in the Film. Plaintiff is grasping at straws.

As Defendants have previously stated, these characters are utterly dissimilar: Cheryl enters the Book as a professional success, and the point of the story is that she wants to make sure that Cory will want to marry her even with full knowledge of her *past*. In the Film, Lindsay's past was happy, but her husband's death caused her to drop out of nursing school and take a janitorial job to take care of her young daughter, so that her *present* is troubled. She expresses no concern that her problems (which, unlike Cheryl's, are purely financial) will turn Wesley off. In fact, it is his desire to help her that is the foundation on which their friendship

---

[4] Plaintiff tries to avoid this dissimilarity by making the ridiculous argument that the Film divides Cheryl's counterpart into two people – Lindsay and her daughter Ariel, who supposedly has the "exact same experiences" in the present that Cheryl had in the past.. (P.Opp. at 8.) In addition to the fact that Plaintiff has unwittingly acknowledged the dissimilarity in detailed expression, Ariel has no more suffered the sort of traumas suffered by Cheryl than has Lindsay.

5

(and, later, stronger feelings) builds.

Nor are the problems which Lindsay actually does suffer substantially similar in copyrightable expression to those Cheryl suffered as a child. Cheryl was kidnapped and raped by two men, not "a deviant in a shelter." (P.Opp. at 6.)[5] In the Film, as Lindsay is in the homeless shelter, someone puts a hand over her mouth, causing Lindsay to grab Ariel and rush out. There is no kidnapping and no rape. There is no actionable similarity.

3.  *Natalie and Salina Are Dissimilar, As Are Walter and Salina*

Plaintiff tries to compare both Wesley's fiancée, Natalie, and even his brother, Walter, to Cory's ex-girlfriend Salina.

First, Plaintiff says that "the girlfriend explicitly states that she does not want children, but the male and female leads explicitly state that they do." (P.Opp. at 9.) In the Film, when Natalie and Wesley agree – lovingly, and with no bitterness between them – that they should call off their wedding, Natalie tells Wesley that despite his hopes that she would change her mind, she doesn't want children. Plaintiff does not indicate where Salina supposedly "explicitly states that she does not want children," but *Cory* (not Salina) tells Cheryl that he and Salina could not have conceived children together, and that "*it was a relief" to him* because "she was too wrapped up in her career to ever be a real mother." (Book at 162.) These are hardly substantially similar. Morover, as Defendants pointed out in their moving papers, while Salina is jealous, malicious and scheming to the point of being a sociopath, Natalie parts with Wesley lovingly, and exhibits *no* jealousy or anger toward Lindsay.

Plaintiff next improbably asserts actionable similarity between Salina and Wesley's brother Walter, arguing that each "acts out wildly and unpredictably trying to sabotage him [i.e.,

---

[5] Once again, Plaintiff's failure to give page citations to the Book often makes it difficult to know what she purports to be referencing.

Cory or Wesley]." (P.Opp. at 9-10.) Salina, Cory's ex-girlfriend, is so desperate to get him back that she has cut the lines in his speedboat and risked killing both him and Cheryl as part of her scheme to frame Cheryl. (Book at 190-93.) Walter, in contrast, is angry at everyone, and is resentful that Wesley runs the Deeds Corporation instead of him. Near the end of the Film, he can't resist the opportunity to cause some mischief by drawing Lindsay into a meeting with Wilimena (his and Wesley's mother) and Natalie. This is another perfect example of Plaintiff using parallel verbiage to describe plot elements which are not at all parallel.

### C.  Random and Trivial Similarities Are Not Actionable

Examples of the random and/or trivial similarities alleged by Plaintiff, which, even if they were accurately described, would not make the fundamentally different plots of the Book and Film any more similar, include the following:

(i) The so-called "near-drowning": Plaintiff compares Cory "almost drown[ing]" after his speedboat's collision with a rock has left him with a concussion, with Wesley "tell[ing] a story of almost drowning" as a child. (P.Opp. at 6.) Not only is the difference in these story elements evident from Plaintiff's own description of them, but they are also random and trivial.

(ii) The alleged "parking spot/taxi" similarity: Plaintiff tries to equate the "lead female" taking a "black man's parking spot" with the "lead female" taking a "black man's taxi." (P.Opp. at 6; emphasis in original.) Plaintiff actually reverses which happens in the Book and which in the Film, but there is no similarity of expression in any event. In the Film, Lindsay leaves her van, with Ariel in it, in a parking spot in the garage of the building where she works – i.e., the office of the Deeds Corporation. Unbeknownst to her, she has taken the spot of Wesley Deeds, the CEO. This scene serves to advance several important plot elements: it provides an example of Wesley's brother Walter's anger management issues; it shows Wesley's good nature,

7

when he calmly intervenes in Walter's tirade, is concerned for the frightened Ariel, and stops the tow truck from taking Lindsay's van; and it reveals Lindsay's own edgy and proud "attitude." In the taxi scene in the Book, Cheryl, who is on her way to North Carolina to meet Cory, accuses a man of taking the taxi which she had called, only to find her taxi pulling up, revealing her hasty and erroneous accusation. (Book at 6-8.) The two scenes are manifestly dissimilar in expression and do not have the same significance vis-à-vis their respective stories.

(iii) The so-called "cheating with a blonde?": Plaintiff compares a misunderstanding in the Book, in which the admittedly "paranoid" Cheryl accuses Cory of having had sex with a masseuse, to a scene in the Film in which Wesley's fiancée Natalie finds a blonde hair on a pillowcase, but exhibits no suspicion because Wesley is so predictable and trustworthy. (P.Opp. at 7.) As a preliminary matter, the referenced page in the Book (12) makes no mention of a blonde. More importantly, the "paranoid" Cheryl's suspicious reaction, and the rant that follows, ruin Cory's planned proposal (Book at 12-13, 19-20), while the momentary scene in the Film serves to show that Natalie has no concern about Wesley's fidelity (*i.e.*, it emphasizes precisely the opposite trait, and in a character who is not alleged to be a counterpart).

(iv) The "accidental disclosure": Plaintiff compares Cheryl's description of how, as a child, she unthinkingly mentioned that her mother "only smoke[d] cigarettes and herb" (Book at 135), to the scene in the Film in which Ariel's teacher persuades her to disclose that she and her mother are homeless, which is the predicate for Ariel being taken away by child welfare until Lindsay can find a home. This causes Wesley, who has witnessed Ariel being taken from Lindsay, to offer Lindsay use of a corporate apartment so that she will have a home and can be reunited with Ariel. (P.Opp. at 9.) They are not comparable.

8

The law is clear that Plaintiff may not pad her allegations of similarity by listing random elements such as these, let alone when they are given dissimilar expression. Reference to such scattered, random elements is expressly disfavored as being "inherently subjective and unreliable . . . ." See Williams v. Crichton, 84 F.3d at 590 (citations and quotations omitted); Allen v. Scholastic, Inc., 739 F. Supp. 2d 642, 663 (S.D.N.Y. 2011); Hogan v. DC Comics, 48 F. Supp. 2d 298, 313 (S.D.N.Y. 1999). Nor does referencing trivial points support Plaintiff's claim. See Muller v. Twentieth Century Fox Film Corp., 794 F. Supp. 2d 429, 440 (S.D.N.Y. 2011), aff'd, Muller v. Anderson, 2012 U.S. App. LEXIS 23033 (2d Cir. 2012) ("Critical to the issue of improper appropriation is that the copied elements of the work are original and non-trivial")(citation omitted; emphasis supplied). Plaintiff also may not rely on *scenes a faire* to support her claim. The so-called "sweet goodbyes" (P.Opp. at 10) (in which Plaintiff again distorts the Book) and a fatherless girl's "longing for [her] father" (id. at 9) are neither protectable nor actionable. See generally Walker, 784 F.2d at 50.

D.  **Plaintiff's Reliance on *Gal* Is Misplaced**

In stark contrast to the wealth of cases relied upon by Defendants in support of their motion, Plaintiff relies on just one – Gal v. Viacom Int'l, Inc., 403 F. Supp. 2d 294 (S.D.N.Y. 2005) – for her opposition, and that reliance is misplaced. Plaintiff cites Gal for the proposition that a copyright claim should not be dismissed on a Rule 12 motion despite differences in "narration" and "pacing" (which Plaintiff acknowledges are different here). (P.Opp. at 11.) In Gal, however, the court found that, unlike here, the stories and details of the novel and screenplay there at issue were truly parallel:

> it is clear that there are indeed similarities between the Novel and the Screenplay. For example, both open at a drug company meeting in the Grand Hyatt hotel in Manhattan, which meeting is interrupted by a disgruntled man complaining about the ineffectiveness of a newly developed "miracle drug" with regard to an ill family member. Both works

9

have a relatively young, divorced, ambitious female reporter as protagonist, and both involve a conspiracy involving drug companies seeking to gain the patent on the miracle drug in order to reap huge profits. In both works, the scientist developing the drug goes missing, and is targeted as part of the conspiracy. Also, in each work, the wife of the lead scientist is having an affair with the head of one of the drug companies involved, and both wives are murdered. With regard to total concept and feel, *see Hamil America,* 193 F.3d at 102, both the Novel and the Screenplay are fast-paced, action-packed, twist-filled thrillers that end positively, when the conspiracy is exposed, the miracle drug is shown to work, and the protagonist begins a new romantic relationship.

(Id. at 306.) Plaintiff fails to note that the Gal court simply said that, in the face of such extensive parallels, a few dissimilarities will not *automatically* render a claim legally insufficient.[6] (Id. at 307; emphasis supplied.) In this case, however, as shown above and in Defendants' moving brief, there are no comparable similarities in the present case, which is so singularly without merit that it can only be regarded as frivolous.

The Film simply does not tell the same story as the Book, even at a general level, which would not be sufficient to defeat the present motion. See, e.g., Walker, 784 F.2d at 49 (granting summary judgment even though "[a]t the most general level, the movie and the book tell the same story"). The Book and Film do not even approach the level of similarity which existed in the legion of cases which have been dismissed as a matter of law because the similarities were not actionable as a matter of law. See, e.g., Green v. Lindsey, 885 F. Supp. 469 (S.D.N.Y. 1992), aff'd, 9 F.3d 1537 (2d Cir. 1993); Denker v. Uhry, 820 F. Supp. 722 (S.D.N.Y. 1992), aff'd, 996 F.2d 301 (2d Cir. 1993); Hogan, 48 F. Supp. 2d 298.

---

[6] Plaintiff also ignores the Gal court's later grant of summary judgment in light of the plaintiff's failure to show copying or striking similarity. Gal v. Viacom Int'l, Inc., 518 F. Supp. 2d 526 (S.D.N.Y. 2007). Significantly, contrary to the proposition for which Plaintiff cited the earlier opinion, the court there noted that "differences in narrative structure have been deemed significant . . ." in finding an absence of substantial similarity. Id. at 544, citing Kretschmer v. Warner Bros., 1994 U.S. Dist. LEXIS 7805 (S.D.N.Y. June 7, 1994). Kretschmer, in turn, that a difference in pacing and structure, such as exists in the present case, undercuts a claim of actionable similarity. Id. at *24.

10

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Defendants' motion for judgment on the pleadings should be granted and Plaintiff's Complaint should be dismissed in its entirety, with prejudice.

Dated: August 20, 2013

                    PRYOR CASHMAN LLP

By: _____
     Tom J. Ferber
     Stephanie R. Kline
7 Times Square
New York, New York 10036
(212) 421-4100